IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
JUL 29 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

SIERRA CLUB, et al.,

Plaintiffs,

v.

UNITED STATES DEFENSE ENERGY SUPPORT CENTER, et al.,

Defendants,

and

AMERICAN PETROLEUM INSTITUTE, et al.,

Defendant-Intervenors.

Civil Action No.01:11-cv-41

**MEMORANDUM OPINION**

Plaintiffs Sierra Club and Southern Alliance for Clean Energy bring this action seeking declaratory judgment and injunctive relief for Defendants' alleged violations of federal law arising from purchasing contracts for fuel derived from Canadian oil sands recovered crude oil ("COSRC"). They allege that Defendants' contracts violated Section 526 of the Energy Independence and Security Act of 2007 ("EISA"), 42 U.S.C. § 17142, and that Defendants' "Interim Implementation Plan Regarding Section 526 of the Energy Independence and Security Act of 2007" violated the Administrative Procedures Act ("APA")

notice-and-comment rule, 5 U.S.C. 553. Plaintiffs also allege that Defendants violated Section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. § 4332, and Section 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failing to prepare an environmental impact statement for these contracts and for the Interim Implementation Plan. Plaintiffs now move for summary judgment. Defendants and Defendant-Intervenors move for dismissal, or, in the alternative, for summary judgment, arguing, inter alia, that this Court lacks subject matter jurisdiction to hear these claims. Because Plaintiffs lack standing, the motions to dismiss should be granted.

Defendant Defense Logistics Agency ("DLA") is an agency of the United States Department of Defense ("DoD"), whose component DLA Energy (formerly known as the Defense Energy Support Center) is responsible for procurement, storage, and distribution of fuel for DoD and other federal agencies. DLA Energy generally uses competitive bidding to obtain mobility-related fuels for use in the United States. Companies throughout the country sell to DLA Energy refined petroleum products from a variety of crude oil feedstocks, including light, medium, and heavy crudes from a variety of sources, which are comingled at various stages of the shipping and refining process prior to market.

One source of crude oil used by U.S. refineries is the oil sands in Alberta, Canada. Given their proximity, these oil sands

represent roughly 6% of the crude petroleum supplied to all U.S. refiners. It is estimated that the fuel supplied by most refineries to DLA Energy is refined from crude, less than 2% of which is derived from oil sands.

EISA was established to "move the United States toward greater energy independence and security, to increase the production of clean renewable fuels, to protect consumers, to increase efficiency of products, buildings, and vehicles, to promote research on and deploy greenhouse gas capture and storage options, and to improve the energy performance of the federal government, and for other purposes." Pub. L. 110-140, 121 Stat. 1492, 1492 (2007). Section 526, the portion of the EISA at issue in this litigation, provides:

> No Federal agency shall enter into a contract for procurement of an alternative or synthetic fuel, including a fuel produced from nonconventional petroleum sources, for any mobility-related use, other than for research or testing, unless the contract specifies the lifecycle greenhouse gas emissions associated with the production and combustion of the fuel supplied under the contract must, on an ongoing basis, be less than or equal to such emissions from the equivalent conventional fuel produced from conventional petroleum sources.

42 U.S.C. § 17142. In response to passage of EISA Section 526, DLA Energy developed its Interim Implementation Plan to provide guidance to the agency's workforce, suppliers, and customers on how DLA Energy will comply with Section 526 on a preliminary basis, with final guidance to follow. The Interim Implementation

Plan relied on DLA Energy's legal analysis and the most commonly used statutory definitions, commercial usage, and knowledge and experience with energy commodities, as well as the best data available regarding lifecycle greenhouse gas emissions for the various fuels. The Interim Implementation Plan concluded that DLA Energy's contracts for petroleum products were not covered by Section 526.

Plaintiffs' suit has three counts. First, they assert that the mobility-related fuel purchase contracts violate EISA Section 526 because (1) fuel derived from oil sands is allegedly synthetic fuel, or alternatively, oil sands are allegedly a nonconventional petroleum source; (2) some mobility-related fuels supplied from DoD to the U.S. military under these contracts are refined from crude derived in part from Canadian oil sands; and (3) the contracts for those fuels omit Section 526's lifecycle greenhouse gas emissions certification. Second, they assert that DLA Energy violated the APA in developing the Interim Plan without following the rulemaking procedures of 5 U.S.C. § 553(b) and that the Interim Implementation Plan is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of 5 U.S.C. § 706. Third, Plaintiffs assert that, under NEPA Section 102(2)(C), DLA Energy must conduct, for both its mobility-related fuel purchases and the Interim Implementation Plan, an environmental assessment to

review the environmental impacts of these agency activities. Because these assessments were not conducted, Plaintiffs allege DLA Energy violated NEPA and thus the APA.

As a result of these alleged violations, Plaintiffs assert two types of injuries. First, Plaintiffs allege an increased risk of harm to their health, recreational, economic, and aesthetic interests as a result of Defendants' conduct. They argue that DLA Energy's failure to include the lifecycle certification has caused, at least in part, this increased risk to Plaintiffs' respective members. They claim this increased risk will be redressed by requiring Defendants to comply with Section 526, thereby restricting the use of oil sands derived fuels by Defendants and reducing the impacts of the mining, refining, and end use of these fuels, including increased greenhouse gas emissions and global warming.

Plaintiffs also allege that DLA Energy's compliance with APA rulemaking procedures and with NEPA procedures could lead DLA Energy to rethink, and possibly change, its approach and decide to include the Section 526 certification in its current and future contracts.

Before reaching the merits of the case, this Court must first address the Defendants' and Defendant-Intervenors' motions to dismiss for lack of subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)

(citations omitted). Because lack of standing is asserted as a basis for lack of subject matter jurisdiction, Plaintiffs bear the burden of establishing jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). Because standing elements are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted).

As organizations purporting to bring suit on behalf of their members, Plaintiffs must demonstrate that (1) their members would have standing to sue as individuals; (2) the interest they seek to protect are germane to the organizations' purposes; and (3) that the suit does not require the participation of individual members. See Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). Defendants do not contend that Plaintiffs fail to meet the second and third prongs of organizational standing; rather, they argue that Plaintiffs have failed to demonstrate the first prong—that their members would have standing to sue as individuals. To establish their members would have the "irreducible constitutional minimum of standing", Plaintiffs must establish that their members suffered an "injury-in-fact," that was caused by Defendants'

conduct and that injury can be redressed by a favorable outcome in this case. Lujan, 504 U.S. at 560. The standing analysis in environmental cases does not examine whether the challenged activity "'will significantly affect' the environment in general . . . rather . . . it focuses on whether [plaintiffs] have shown a particularized environmental interest of theirs that will suffer demonstrably increased risk, and whether [defendant's activity] . . . is substantially likely to cause the demonstrable increase in risk to their particularized interest." Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 665 (D.C. Cir. 1996).

Here, Plaintiffs allege both traditional and procedural injuries. A "traditional" injury-in-fact "is an invasion of a legally-protected interest that is (a) concrete and particularized and (b) actual or imminent, not 'conjectural or hypothetical.'" Lujan, 504 U.S. at 560. Plaintiffs allege that their members face an increased risk of harm to their health, recreational, economic, and aesthetic interests due to increased greenhouse gas emissions caused by Defendants' purchases of fuel derived in part from COSRC. In addition to the allegations in the Complaint, Plaintiffs also attached several affidavits to its opposition to Defendants' dispositive motions describing their members' alleged injuries based on these purchases, including diminished recreational and aesthetic enjoyment of

areas in various states across the country, property damage, and economic harm.

The allegations in the complaint and the affidavits do not suffice for traditional injury-in-fact. Plaintiffs base their injuries on climate changes associated with greenhouse gas emissions that have caused or purportedly will cause generalized environmental impacts, such as increased frequency of intense storms, increased risk of fire to public lands, increased risk of damage to coastal properties, and loss of plant species. But Plaintiffs do not sufficiently allege that they have or will suffer injuries from pipeline transmission or the refining of COSRC, let alone DLA Energy's purchasing contracts for fuel that may contain COSRC.

Nor do Plaintiffs' allegations of a procedural injury in Counts Two and Three satisfy the injury requirement. An allegation of procedural injury may suffice for purposes of standing where the "government's failure to follow statutorily prescribed procedures . . . impairs a separate concrete interest of the plaintiff." Pye v. United States, 269 F.3d 459, 467 (4th Cir. 2001) (citing Lujan, 504 U.S. at 571-73). Plaintiffs argue that their procedural injuries circumvent the ordinary requirements for standing, quoting a footnote in Lujan for support. See Lujan, 504 U.S. at 572, n.7. That footnote, however, provides that someone "who has been accorded a

procedural right to protect his concrete interests can assert that right without meeting all the normal standards [of standing] for redressability and immediacy." Id. (emphasis added). Thus, Plaintiffs must show a separate concrete interest in order to assert a procedural injury here. See Florida Audobon Soc'y, 94 F.3d 65 at 664 ("[I]n order to show that the interest asserted is more than a mere 'general interest [in the alleged procedural violation] common to all members of the public,' . . . the plaintiff must show that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff.") (citations omitted). But Plaintiffs have failed to demonstrate a particularized injury stemming from the military's purchase and contracts for COSRC. Without more, "[t]he mere violation of a procedural requirement does not permit any and all persons to sue to enforce the requirement." Id. Because they lack a concrete and particularized injury, Plaintiffs do not have standing to bring this lawsuit.

Plaintiffs have also failed to sufficiently plead a causal connection between their alleged injuries and DLA Energy's fuel contracts. A plaintiff must demonstrate that their injuries are "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Bennett v. Spear, 520 U.S. 154, 167 (1997)

(citing Lujan, 504 U.S. at 560-61). Plaintiffs fail to satisfy the causation requirement for two reasons: (1) their alleged injuries are not fairly traceable to the challenged action of Defendants and instead rely on an attenuated and speculative causal chain; and (2) those alleged injuries are the result of independent actions of third parties before the court, namely producers of fuel from Canadian oil sands and persons who would purchase that fuel if DLA Energy did not, and emitters of greenhouse gases whose emissions will continue regardless of what happens in this lawsuit.

In Count One, Plaintiff's injuries are too attenuated from the conduct they assert for the basis of their claim. While Plaintiffs allege that their members will be affected by the negative impacts of increased greenhouse gas emissions resulting from the refining and end use of COSRC-derived fuels and will face an increased risk of harm to their interests as a result of Defendants' failure to comply with Section 526, Plaintiffs acknowledge that greenhouse gas concentrations have been increasing markedly since the start of the industrial revolution and that many greenhouse gases have lifetimes of decades or centuries in the atmosphere. Greenhouse gases are unique, moreover, in that they are both well-mixed and long-lived in the atmosphere, so that concentrations of greenhouse gases at a given time are determined by the emissions of all sources

worldwide over centuries, rather than by emissions from local, contemporaneous sources. See 75 Fed. Reg. 31,514, 31,529 (June 3, 2010). A reduction of greenhouse gas emissions in one area or from one source has no effect on greenhouse gas levels that are specific to that area, and may even have no effect on global greenhouse gas levels because other sources (including those in other countries) may increase their own emissions. Id.; see also North Carolina ex rel. Cooper v. TVA, 615 F.3d 391, 302 (4th Cir. 2010).

For Plaintiffs to satisfy the causation requirement, the following logical leaps and attenuated assumptions would have to be made. First, if Defendants had complied with Section 526, they would not have been able to purchase fuels which are refined in part from COSRC. Second, without those purchases, U.S. refineries would not have been able to sell such fuels refined in part from COSRC to other purchasers and thus would have reduced their demand for and refining of such crude. Third, if those domestic refiners had reduced their demand for COSRC, no other purchasers would have purchased the same or comparable amounts. Fourth, based on these assumptions, producers of fuel from COSRC would have and will commensurately reduce the mining and production activities that emit greenhouse gases. Fifth, this reduction would not have been offset by increased emissions anywhere else. Sixth, as a result, fewer overall greenhouse

gases would have mixed in the earth's atmosphere. Seventh, as a result of the emissions reduction, the accumulated atmospheric emissions would trap less heat. Eighth, the resulting reduction in atmospheric heat would result in a reduction in the risk of harm Plaintiffs allegedly face to their health, recreation, economic, and aesthetic interests as a result of climate change.

As this attenuated causal chain demonstrates, it is impossible to conclude that the lack of a lifecycle emissions certification in DLA Energy contracts encouraged the producers of fuel from COSRC to engage in mining or production activities that they would not have otherwise taken.

Plaintiffs also cannot establish that their injuries were not caused by the independent actions of third parties. Their alleged chain of causation in Count One fails because it "'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.'" Lujan, 504 U.S. at 562 (quoting ASARCO, Inc. v. Kadish, 490 U.S. 605, 615 (1989)(opinion of Kennedy, J.)). "When claimed injuries are 'highly indirect' and result from 'the independent action of some third party not before the court,' too much speculation is required to connect the links in the chain of causation." Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A., 677 F. Supp. 2d 847, 849-50 (D. Md. 2010)

(quoting Allen v. Wright, 468 U.S. 737, 757-59 (1984)). Plaintiffs' alleged injuries are the result of the independent actions of at least two distinct categories of third parties not before the court: (1) the producers of fuel from COSRC and persons who would purchase that fuel if the U.S. military did not; and (2) emitters of greenhouse gases around the world whose emissions will continue regardless of what happens in this case. Similarly, Plaintiffs offer no facts from which the Court could conclude that, if there had been a reduction in the amount of greenhouse gases emitted by producers of fuel from oil sands crude, those reductions would not have been offset by increased emissions elsewhere on the planet. As noted above, greenhouse gases are unique in that they are well-mixed and long-lived in atmosphere, such that concentrations of greenhouse gases at a given time are determined by the emissions of all sources worldwide over centuries. See 75 Fed. Reg. 31,514, 31,529 (June 3, 2010). As a result, a reduction of greenhouse gas emissions in one area or from one source may have no effect on global greenhouse gas levels because other sources (including those in other countries) may increase their own emissions. Thus, any increased risks Plaintiffs allegedly face from climate change are the result of independent actors around the world.

Plaintiffs have also failed to allege facts sufficient to establish redressability for Count One. Enjoining Defendants'

from entering into contracts for the purchase of fuels derived from COSRC will not reduce the climate change-related risks that Plaintiffs allegedly face if others around the world purchase the same amounts of the fuels that Defendants are forced to forgo. Nor will such an injunction reduce those alleged risks if others around the world increase greenhouse gas emissions in a manner that offsets any reductions in emissions from the oil sands industry that could possibly be attributed to DLA Energy's compliance with Section 526's lifecycle emissions certification requirement. As the Court can fashion no relief that accounts for these actions by countless parties before it, Plaintiffs have failed to establish redressability. See Allen v. Wright, 468 U.S. 737, 759 n.24 (1984) (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42-43 (1976)) (explaining that, where the relief requested by the plaintiffs is "simply the cessation of the allegedly illegal conduct, the "'redressability' analysis is identical to the 'fairly traceable' analysis").

Plaintiffs' failure to demonstrate the causation and redressability necessary to establish their standing to litigate their Section 526 claim is also fatal to their other counts, which depend on an even more attenuated causal relationship between DLA Energy's conduct at issue and the threat to concrete interests alleged by Plaintiffs. In Counts Two and Three, Plaintiffs allege, respectively, that DLA Energy failed to

comply with procedural requirements in developing its Interim Implementation Plan, which guided its decision not to impose the lifecycle emissions certification, and that the agency failed to comply with NEPA procedures, which Plaintiffs argue may have led DLA Energy to include the lifecycle emissions certification in its fuel contracts. While Plaintiffs who establish a procedural interest need not demonstrate that their injuries "will be fully remedied by a favorable decision by the court," or that "the result of the agency's deliberations will be different if the statutory procedure is followed[,]" Pye, 269 F.3d at 471-72, they must still "show that the procedural step was connected to the substantive result[,]" Massachusetts v. EPA, 549 497, 572 (2007) (citation omitted), and must demonstrate a non-speculative likelihood that the injury would be redressed by a favorable decision. See Lujan, 504 U.S. at 560-61 (citations omitted).

Plaintiffs fail to establish a reasonable probability that the DLA Energy behavior challenged in Counts Two and Three is responsible for the asserted harms and threats to their interests, and also fail to establish that the relief requested is capable of redressing those harms and interests. To do so, Plaintiffs must depend on unsupported assumptions regarding the behavior of third parties. Plaintiffs assume but cannot establish any likelihood that refiners, COSRC developers, and

marketers will undertake the steps required to dress the harms that Plaintiffs allege. Consequently, Plaintiffs lack standing to raise these claims.

Plaintiffs' claims also fail prudential standing requirements. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." Warth v. Seldin, 422 U.S. 490, 499 (1975) (citing Barrows v. Jackson, 346 U.S. 249 (1953)). Prudential standing serves to avoid the adjudication of "abstract questions of wide public significance . . . pervasively shared and most appropriately addressed in the representative branches." Valley Forge Christian College v. Americans United For Separation of Church and State, Inc., 454 U.S. 464, 474 (1982). Plaintiff's claim that Defendants' fuel purchasing will affect them via the generalized risk associated with global warming presents exactly the type of claim prudential standing requirements caution against.

Moreover, Count Three appears to now be moot. Defendants have represented to the Court that they will prepare a NEPA document for the military's mobility fuel program.

Because Plaintiffs' lack standing, this case should be dismissed. An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
July 29, 2011